UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Chelsea B.,[1]

                    Plaintiff,                    Case No.  21-cv-1248 (DSD/LIB)

        v.                                       **REPORT AND RECOMMENDATION**

Kilolo Kijakazi,
Acting Commissioner of Social Security,

                    Defendant.

Plaintiff, Chelsea B. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Commissioner of Social Security ("Defendant") denying her application for disability benefits. This matter has been referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. This Court has jurisdiction over the claims pursuant to 42 U.S.C. § 405(g). Both parties submitted cross-motions for summary judgment, [Docket Nos. 20, 22], and the Court took the matter under advisement on the written submissions pursuant to the Local Rules for this District governing motions filed in Social Security cases.

For the reasons discussed below, the Court recommends that Plaintiff's Motion for Summary Judgment, [Docket No. 20], be **DENIED**, and Defendant's Motion for Summary Judgment, [Docket No. 22], be **GRANTED**.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Accordingly, where the Court refers to Plaintiff by her name only her first name and last initial are provided.

## I.  Procedural History

On September 20, 2013, Plaintiff filed an application for a period of disability and disability benefits, and on January 14, 2014, Plaintiff filed an application for supplemental security income. (Tr. 349–350, 360–365).[2] In both applications, Plaintiff alleged that her disability began on March 1, 2012. (Tr. 349). The Commissioner initially denied Plaintiff's applications on March 21, 2014, and again, upon reconsideration, on October 14, 2014. (Tr. 151, 171–183). On October 17, 2014, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 187).

Administrative Law Judge Virginia Khun (hereinafter "ALJ Khun") conducted a hearing on December 29, 2015. (Tr. 187). At the administrative hearing, Plaintiff was represented by an attorney. (Tr. 53). An independent medical expert, Karen Butler, Ph.D., L.P.; an independent vocational expert, William Villa; and Plaintiff testified at the hearing. (Tr. 51–91, 187).

On January 28, 2016, ALJ Kuhn issued a decision denying Plaintiff's request for a period of disability, disability insurance benefits, and supplemental security income. (Tr. 184–203). ALJ Kuhn concluded that Plaintiff was not disabled within meaning of the Social Security Act. (Tr. 203).

Plaintiff thereafter sought review of the decision by the Appeals Council, and Plaintiff submitted additional evidence to the Appeals Council. (Tr. 210). Subsequently, on May 23, 2017, the Appeals Council granted Plaintiff's request for review. (Tr. 210). The Appeals Council issued an Order remanding Plaintiff's application to ALJ Kuhn for further proceedings. (Tr. 212–214).

---

[2] Throughout this Order, the Court refers to the Administrative Record, [Docket Nos. 18, 19], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 166 exhibits spanning over 2868 pages. (See, Administrative Record [Docket Nos. 18, 19]). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.

ALJ Kuhn conducted a second hearing on October 24, 2017. (Tr. 16, 92–129). At this second administrative hearing, Plaintiff was represented by an attorney. (Tr. 16, 92, 94). An independent medical expert, Karen Butler, Ph.D., L.P.; an independent vocational expert, L. David Russel; and Plaintiff testified at the hearing. (Tr. 16, 92–129).

On November 24, 2017, ALJ Kuhn issued a second decision denying Plaintiff's request for a period of disability, disability insurance benefits, and supplemental security income. (Tr. 16–36). ALJ Kuhn again concluded that Plaintiff was not disabled within meaning of the Social Security Act. (Tr. 35–36).

Plaintiff thereafter sought review of ALJ Kuhn's second decision by the Appeals Council. (Tr. 1–6). Subsequently, on August 9, 2018, the Appeals Council denied Plaintiff's request for review. (Tr. 1).

On October 8, 2018, Plaintiff filed an action in this Court. (Tr. 1051–1079). Plaintiff's initial action in this Court resulted in an Order of this Court remanding Plaintiff's claim to the Social Security Administration for further proceedings. (Tr. 1078).

Pursuant to the Order for remand, Administrative Law Judge Erin Schmidt (hereinafter "ALJ Schmidt") conducted another administrative hearing on November 20, 2020. (Tr. 2826–2868). At the administrative hearing, Plaintiff was represented by her attorney. (Tr. 2826). An independent medical expert, Allen Heinemann, Ph.D., L.P.; an independent vocational expert, Kenneth Ogren (hereinafter "IVE Ogren"); and Plaintiff testified at the hearing. (Tr. 2826–2868).

On January 27, 2017, ALJ Schmidt issued a decision denying Plaintiff's request for a period of disability, disability insurance benefits, and supplemental security income. (Tr. 976–1002). ALJ Schmidt concluded that Plaintiff was not disabled within meaning of the Social

Security Act. (Tr. 1001–1002). Accordingly, the ALJ's decision became the final decision of the Commissioner. See, 20 C.F.R. §§ 404.981, 404.984, 416.1481.

On May 19, 2021, Plaintiff filed the present action. (Compl. [Docket No. 1]).[3] Thereafter, both parties submitted cross-motions for summary judgment, [Docket Nos. 20, 22], and the Court took the matter under advisement on the written submissions pursuant to the Local Rules for this District governing motions filed in Social Security cases.

## II. Standards of Review

### A. Administrative Law Judge's Five-Step Analysis

If a claimant's initial application for disability benefits is denied, she may request reconsideration of the decision. 20 C.F.R. §§ 404.907–404.909. A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge ("ALJ"). 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis. This analysis requires the ALJ to make a series of factual findings regarding the claimant's impairments, residual functional capacity, age, education, and work experience. See, 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also, Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

---

[3] "[W]hen a case is remanded by a Federal court for further consideration . . . the [subsequent] decision of the administrative law judge . . . will become the final decision of the Commissioner," and therefore, the claimant may appeal the ALJ's post-remand decision directly to the federal court. 20 C.F.R. § 404.984(a).

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

### B.  Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, she may request review by the Appeals Council, although the Appeals Council need not grant that request for review. See, 20 C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the Appeals Council's action. See, 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

In this case, however, Plaintiff appealed the ALJ Schmidt's decision directly to this Court. Plaintiff is permitted to do so because her claim was before ALJ Schmidt pursuant to a remand from this Court. See, 20 C.F.R. § 404.984(a). Thus, ALJ Schmidt's decision is the final decision of the Commissioner. See, 20 C.F.R. § 404.984; 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

### C.  Judicial Review

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps. Judicial review of the decision to deny disability benefits, however, is constrained to a determination of whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner [through the ALJ] only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's

conclusion." <u>Buckner</u>, 213 F.3d at 1012 (quoting <u>Prosch v. Apfel</u>, 201 F.3d 1010, 1012 (8th Cir. 2000)); <u>Coleman v. Astrue</u>, 498 F.3d 767, 770 (8th Cir. 2007).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. <u>Hilkemeyer v. Barnhart</u>, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. <u>Culbertson v. Shalala</u>, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion. <u>Milam v. Colvin</u>, 794 F.3d 978, 983 (8th Cir. 2015); <u>Woolf v. Shalala</u>, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision through the ALJ, the Court must affirm the decision. <u>Robinson v. Sullivan</u>, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the Court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" <u>Bradley v. Astrue</u>, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." <u>Id.</u> "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." <u>Medhaug v. Astrue</u>, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The claimant bears the burden under the Social Security Act of proving that she is disabled. <u>See</u>, 20 C.F.R. § 404.1512(a); <u>Whitman v. Colvin</u>, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated she cannot perform prior work due to a disability, the

burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity (hereinafter "RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

## III. Decision Under Review

Before beginning the five-step disability evaluation process in the present case, ALJ Schmidt first determined that Plaintiff met the insured status requirement of Social Security Act through March 31, 2021. (Tr. 982). This finding is not in dispute.

Thereafter, ALJ Schmidt made the following determinations during the five-step disability evaluation process.

At step one, ALJ Schmidt concluded that Plaintiff had not engage in substantial gainful activity since March 1, 2012, Plaintiff's alleged disability onset date. (Tr. 982). This finding is not in dispute. The Court will refer to the period of time between that date Plaintiff last engaged in substantial gainful activity and the date of ALJ Schmidt's decision as "the adjudicated period."

At step two, ALJ Schmidt concluded that Plaintiff had "the following severe impairment: bipolar disorder, generalized anxiety disorder (GAD), panic disorder, borderline personality disorder, post-traumatic stress disorder (PTSD), and obesity." (Tr. 983). Plaintiff does not challenge this finding made by ALJ Schmidt at step two.

At step three, ALJ Schmidt concluded that Plaintiff did not have a presumptively disabling impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 986). Specifically, ALJ Schmidt found that Plaintiff did not have any impairment or combination of

impairments which met or medically equaled listing 12.04, 12.06, 12.08, or 12.15. (Tr. 986–993). Plaintiff does not challenge ALJ Schmidt's findings at step three.

At step four, the ALJ made the following RFC determination:

[Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with the following limitations: simple routine tasks involving only simply work related decisions and routine workplace changes; occasional interactions with coworkers and supervisors; no interaction with the general public; no tandem tasks with coworkers; [and] no fast paced production work, defined as work requiring hourly or more frequent production quotas.

(Tr. 993). Plaintiff challenges this RFC determination made by ALJ Schmidt.

In making this RFC determination, ALJ Schmidt, considering the record as a whole, found that "while the [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in" ALJ Schmidt's decision. (Tr. 994). Plaintiff does not directly challenge this credibility finding by ALJ Schmidt.

Based on her RFC determination and relying on the testimony from the independent vocational expert, IVE Ogren, ALJ Schmidt found that Plaintiff was unable to perform her past relevant work. (Tr. 1000). Plaintiff does not challenge this finding.

Finally, at step five, ALJ Schmidt concluded that "[c]onsidering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Tr. 1001). Relying upon testimony from IVE Ogren, ALJ Schmidt specifically found that among the occupations Plaintiff would be able to perform were "laundry worker" of which there are 209,000 positions in the national economy; "night cleaner" of which there are 255,000 positions in the national

economy; and "kitchen helper" of which there are 514,000 positions in the national economy. (Tr. 1001). Plaintiff does not directly challenge ALJ Schmidt's findings at step five, other than as an implicit derivative challenge based on Plaintiff's aforementioned challenge to ALJ Schmidt's RFC determination.

ALJ Schmidt therefore found that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period. (Tr. 1001–1002).

## IV. Analysis

Plaintiff asserts three overarching issues on her appeal of the ALJ's decision. Plaintiff first argues that ALJ Schmidt erred in finding that Plaintiff's "mental impairments would not have prevented her from performing work on a regular and sustained basis for any continuous period of 12 months." (Plf.'s Mem. [Docket No. 21] at 7–10) (capitalization altered). Second, Plaintiff contends that ALJ Schmidt "made significant legal errors in evaluating" certain medical opinions. (Id. at 11–16). Third, Plaintiff argues that remand back to the Social Security Administration is required because the appointment of Andrew Saul as the Commissioner of Social Security Administration violated the separation of powers. (Id. at 16–22).

The Commissioner contends that she is entitled to summary judgment, arguing that each of Plaintiff's arguments is unavailing, and that the ALJ Schmidt's opinion is supported by substantial evidence in the record as a whole. (Def.'s Mem. [Docket No. 23]).

### A.  Mental Impairments Causing Absences from Work

The Eighth Circuit Court of Appeals has held that a plaintiff's residual functional capacity must be based on her ability to perform the requisite employment tasks on a daily basis for eight hours a day, five days a week. See, e.g., Cline v. Sullivan, 939 F.2d 560, 565 (8th Cir. 1991); McCoy v. Astrue, 648 F.3d 605, 617 (8th Cir. 2011). One of the considerations in

assessing a plaintiff's residual functional capacity is the effects of said plaintiff's impairments, as well as, "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." SSR 96-8p, 1996 WL 374184, at *5.

Excessive absenteeism from work resulting from a plaintiff's impairment or need for treatment may constitute evidence that said plaintiff is unable to perform work on a regular and continuing basis or on an equivalent schedule. See, Baker v. Apfel, 159 F.3d 1140, 1146 (8th Cir. 1998). An RFC determination is required to account for excessive absenteeism from work only when the excessive absenteeism is demonstrated to last for at least a continuous period of twelve months. See, Id.; 20 C.F.R. § 416.1509. A plaintiff must point to medical evidence or opinion evidence demonstrating that either her impairment or treatment of said impairment would require her to be consistently absent from work a significant portion of the day. See, Gude v. Berryhill, No. 2:16-cv-79 (SPM), 2018 WL 1470455, at *3–5 (E.D. Mo. Mar. 26, 2018); Ross v. Apfel, 218 F.3d 844, 848 (8th Cir. 2000); Baker v. Apfel, 159 F.3d 1140, 1146 (8th Cir. 1998); Orr v. Chater, 956 F. Supp. 861, 863, 877–78 (N.D. Iowa 1997); Jafari v. Colvin, No. 12-cv-1276 Order [Docket No. 31] at 14–16 (S.D. Ill. July 3, 2014); Jason P. v. Kijakazi, No. 20-cv-688 (TNL), 2021 WL 4483040, at *16 (D. Minn. Sept. 30, 2021); Kim J. H. v. Saul, No. 18-cv-2736 (MJD/TNL), 2020 WL 872308, at *9–11 (D. Minn. Jan. 27, 2020), report and recommendation adopted, 2020 WL 869963 (D. Minn. Feb. 20, 2020); Shoemaker v. Saul, No. 1:19-cv-441, 2020 WL 5117992, at *6 (M.D. N.C. Aug. 31, 2020).

An RFC determination need not, however, account for excessive absenteeism when a plaintiff attempts to demonstrate said absenteeism by merely pointing to high number of appointments the plaintiff is required to attend. "[S]imply because a [plaintiff] requires regular

healthcare appointments does not necessarily mean [she] cannot work on the days [she] has appointment, such as by arranging appointments around the work schedule or during breaks, nor even that the [plaintiff] would need to miss an entire work day for an appointment." Morin v. Colvin, No. 4:14-cv-000769-NKL, 2015 WL 4928461, at *9 (W.D. Mo. Aug. 18, 2015); see, Brown v. Saul, No. C18-3071-LTS, 2020 WL 1467044, at *5 (N.D. Iowa Mar. 26, 2020); Jason P. v. Kijakazi, No. 20-cv-688 (TNL), 2021 WL 4483040, at *16 (D. Minn. Sept. 30, 2021); Barnett v. Apfel, 231 F.3d 687, 691 (10th Cir. 2000). Instead, if Plaintiff "contends [her] medical appointments would necessarily conflict with a work schedule, it is [her] burden to demonstrate that." Brown v. Saul, No. C18-3071-LTS, 2020 WL 1467044, at *9 (N.D. Iowa Mar. 26, 2020).

In the present case, ALJ Schmidt determined that nothing in the record established that Plaintiff's impairments or the treatment of those impairments "would have caused excessive absences making the [plaintiff] unable to sustain work on a regular and consistent basis for a continuous period of at least 12 months." (Tr. 995). ALJ Schmidt discussed each of the records Plaintiff now highlights. (Tr. 995–996).

Nevertheless, Plaintiff contends that ALJ Schmidt erred in finding that Plaintiff's mental impairments would not have prevented her from performing work on a regular and sustained schedule for a continuous period of twelve months. In support of this contention, Plaintiff raises three factual challenges to ALJ Schmidt's assessment of the effect Plaintiff's absenteeism will have on Plaintiff's ability to work.[4]

First, Plaintiff asserts that the record does contain a continuous twelve-month period during which she would have been excessively absent from work because between January 1, 2016, and January 1, 2017, she was hospitalized for twenty-three days; "attended partial

---

[4] Plaintiff does not present any legal challenge to ALJ Schmidt's assertion that the RFC requires an absenteeism accommodation only if there is continuous twelve-month period of time when Plaintiff had said absenteeism issues. (See, Plf.'s Mem. [Docket No. 21] at 7–8).

hospitalization" for eight days; required various emergency room treatment; and attended regular therapy appointment, including meeting with her therapist and her case manager. (Plf.'s Mem. [Docket No. 21] at 8–11). Second, Plaintiff argues that ALJ Schmidt failed to consider Plaintiff's inability to sustain work on a sustained and regular basis after 2016 because between July 2016, and July 2017, Plaintiff was hospitalized thirteen days and required emergency room treatment on five additional days. (Id.). Third, Plaintiff contends that ALJ Schmidt erred in rejecting Plaintiff's "allegations that she required partial hospitalization again in April 2017," as a basis to conclude that Plaintiff required "no particularly time-sensitive mental health treatment in [or after] 2017." (Id. at 9).

The Court finds Plaintiff's argument here to be unpersuasive. Plaintiff's assertions are themselves based on misinterpretations of the record.

For example, Plaintiff asserts that the record contains a continuous twelve-month period during which she would have been excessively absent from work because from January 1, 2016, and January 1, 2017, she would have been absent from work a minimum of thirty-one "days due to hospitalizations, emergency room treatment, or partial hospitalization." (Plf.'s Mem. [Docket No. 21] at 8–9) (citing Tr. 812–828, 866, 919, 924–942, 943–946, 2724–2804). Plaintiff's assertion is factually inaccurate. As ALJ Schmidt discussed in her decision, the record actually reflects twenty-four days of hospitalization in the time limit between January 30, 2016, and July 14, 2016. (Tr. 812–828, 924–942).[5] Plaintiff fails to cite to any record demonstrating her hospitalization between July 15, 2016, and January 1, 2017. Thus, the period from January 1,

---

[5] Plaintiff also cites to a July 1, 2017, visit to the emergency room, however, her July 1, 2017, emergency room visit was related only to an acute onset of vaginal pain, and she was discharged the same day she went to the emergency room. (Tr. 966). Plaintiff also cites to page 919 of the record; however, page 919 does not reflect any instances of hospitalization. (Tr. 919). Instead, page 919 is a treatment note from a medicine check visit on May 6, 2016, which lasted only twenty minutes. (Tr. 919).

2016, to January 1, 2017, does not constitute a continuous twelve-month period during which Plaintiff would have been excessively absent from work.[6]

Plaintiff also asserts that the time period between July 2016, and July 2017, demonstrates a continuous twelve-month period during which Plaintiff would have been excessively absent from work because she would have missed eighteen days due to her being hospitalized for thirteen days and requiring emergency room treatment on five additional days. (Plf.'s Mem. [Docket No. 21] at 9) (citing Tr. 924–975). Here again, Plaintiff assertion is based on a mischaracterization of the record. Although the records cited by Plaintiff demonstrate that she was hospitalized from July 1, 2016, through July 14, 2016, the remainder of the records fail to demonstrate the type of hospitalization or treatment which would necessarily require Plaintiff to miss a day of work. For example, four of the five emergency room visits also occurred in the overnight hours outside of normal work hours and two of the emergency room visits lasted only approximately two hours. (Tr 927–975). Moreover, four of the five emergency room visits Plaintiff highlights do not appear to be related to her alleged impairments, including two emergency room visits which resulted from Plaintiff tripping. (Tr. 927–975).

Plaintiff also contends that ALJ Schmidt erred in rejecting Plaintiff's "allegations that she required partial hospitalization again in April 2017," to conclude that Plaintiff required "no particularly time-sensitive mental health treatment in [or after] 2017." (Plf.'s Mem. [Docket No. 21] at 9). Plaintiff's contention here is unsupported by the record now before the Court. Although Plaintiff alleged that she required partial hospitalization in April 2017, there are no records of such a hospitalization. Even after Plaintiff was informed that there was no indication in the record of the alleged hospitalization in April 2017, and given an opportunity to obtain said records, Plaintiff's counsel was unable to obtain any records demonstrating that such a

---

[6] Plaintiff cites to pages 2724 through 2804 of the record; however, these records are from 2015. (Tr. 2724–2804).

hospitalization occurred because Plaintiff was unable to tell her attorney "where or if" the alleged April 2017, hospitalization occurred. (See, Tr. 1348) (providing a letter from Plaintiff's counsel noting that he had been unable to obtain said record because Plaintiff is "unable to tell [him] where or if she participated in" said hospitalization).

In support of her contention that ALJ Schmidt's RFC determination should have accounted for Plaintiff excessive absenteeism, Plaintiff also references several therapy sessions throughout 2016, and 2017, as well as, "two to three hour" treatment sessions which occurred as part of an "adult day treatment" from February 27, 2018, and October 2018. (Plf.'s Mem. [Docket No. 21] at 8–10). However, as ALJ Schmidt discussed in her decision, there is nothing in the record demonstrating that Plaintiff could not have scheduled these appointments around a work schedule or that she would need to miss a full day of work to attend said appointments. (Tr. 996). These types of appointments are an insufficient basis upon which to argue that excessive absenteeism should be accounted for in an RFC determination. See, e.g., Morin v. Colvin, No. 4:14-cv-000769-NKL, 2015 WL 4928461, at *9 (W.D. Mo. Aug. 18, 2015); Brown v. Saul, No. C18-3071-LTS, 2020 WL 1467044, at *5 (N.D. Iowa Mar. 26, 2020); Jason P. v. Kijakazi, No. 20-cv-688 (TNL), 2021 WL 4483040, at *16 (D. Minn. Sept. 30, 2021); Barnett v. Apfel, 231 F.3d 687, 691 (10th Cir. 2000).

In summation, each of ALJ Schmidt's conclusions regarding Plaintiff's excessive absenteeism is support by substantial evidence in the record. For all the reasons discussed above, the record fails to support each of Plaintiff's assertions in contradiction to ALJ Schmidt's conclusions regarding Plaintiff's excessive absenteeism.

**B. Medical Opinion Evidence**

As observed above, Plaintiff also argues that ALJ Schmidt erred in "evaluating" certain medical opinions in the record. (Plf.'s Mem. [Docket No. 21] at 11–16). Specifically, Plaintiff takes issue with ALJ Schmidt's evaluation of the opinions of Dr. Karen Butler, Ph.D.; Dr. Carlos Schenck, M.D.; Jessica Bauman, M.A., L.P.C.C.; Jennifer Bauer, M.S.; Dr. Valerie Lardinois, Psy.D.; and Dr. Brian Kovach, Psy.D. (Id.).

### 1. Dr. Schenck, Ms. Bauman, Dr. Lardinois, Ms. Bauer, and Dr. Kovach

Dr. Schenck authored at least three medical opinions regarding Plaintiff's condition. On August 27, 2013, Dr. Schenck opined that Plaintiff's attendance from work and school would be "very much affected" by her impairments, and he further opined that Plaintiff had marked limitations in her ability to interact appropriately with the public and co-workers; extreme limitations in her ability to interact with supervisors; and marked limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 689). On December 16, 2015, Dr. Schenck opined that Plaintiff had marked limitations in her ability to interact appropriately with the public, supervisors, and co-workers, as well as, her ability to respond appropriately to changes in a routine work environment and extreme limitations in her ability to respond appropriately to work pressures in a usual work setting. (Tr. 805). On September 29, 2017, Dr. Schenck contradictorily opined that Plaintiff had both marked and extreme limitations in her ability to interact with the public; both marked and extreme limitations in her ability to interaction with supervisors; and both marked and extreme limitations in her ability to respond according to changes in a routine work setting. (Tr. 893). Dr. Schenck also opined that Plaintiff had marked limitations in her ability to interact with co-workers and extreme limitations in her ability to respond appropriately to work pressures in a usual work setting. (Tr. 893). ALJ Schmidt assigned "little weight" to Dr. Schenck's opinions reasoning that

the opinions were inconsistent with the record as a whole, including Dr. Schenck's own treatment notes and the testimony of Dr. Butler; based largely on Plaintiff's own subjective reports; and rendered on check the box forms with little to no explanation or supporting evidence provided. (Tr. 998).

On August 22, 2013, Ms. Bauman, Plaintiff's therapist, opined that Plaintiff would have difficulty maintaining regular attendance at school and work. (Tr. 685). On June 16, 2015, Ms. Bauman opined that Plaintiff's prognosis was "unknown . . . [d]ue to lack of therapeutic interaction . . . ." (Tr. 743). ALJ Schmidt assigned "little weight" to the opinions of Ms. Bauman reasoning that the opinion was "rather vague" with no "function-by-function assessment of [Plaintiff's] capabilities" and unsupported with "little explanations of the medical or other evidence relied on in support of it." (Tr. 998–999). ALJ Schmidt also specifically referenced Ms. Bauman's note that she was "unable to provide clinical documentation and opinion in regards to [Plaintiff's] ability to perform work related activities" because she had not observed Plaintiff in such a setting. (Tr. 999).

On September 14, 2015, Ms. Bauer, in her treatment notes for an assessment to determine if Plaintiff qualified for outpatient services, opined that Plaintiff's "symptoms markedly interfere with social and/or occupational functioning." (Tr. 695). Ms. Bauer also opined that Plaintiff met "the State of Minnesota definition of an adult with a Serious and Persistent Mental Illness because" she had been "diagnosed with a mental illness" and she was "likely to have future episodes requiring inpatient or residential treatment unless community support program services [were] provided." (Tr. 696). ALJ Schmidt assigned "little weight" to Ms. Bauer's opinion reasoning that the opinion was inconsistent with the record as a whole and based largely on Plaintiff's subjective complaints (Tr. 999).

On October 28, 2015, Dr. Lardinois and Dr. Kovach, in a co-signed document resulting from an autism spectrum test of Plaintiff, opined there were areas where Plaintiff was "struggling which include her expressive communications skills (related so [sic] social and pragmatic language), maintaining appropriate peer relationships, and managing tasks effectively in the community." (Tr. 788). Dr. Lardinois and Dr. Kovach also checked several boxes indicating that Plaintiff's plan to apply for disability benefits was "supported." (Tr. 788–790). ALJ Schmidt assigned "little weight" to the opinion of Dr. Lardinois and Dr. Kovack reasoning that the opinion failed to provide "any specific work-related functional limitations" and instead merely noted Plaintiff's plan to apply for benefits was "supported." (Tr. 999–1000).

Although Plaintiff characterizes her argument as asserting ALJ Schmidt failed to properly evaluate the medical opinions of Dr. Carlos, Ms. Bauman, Ms. Bauer, Dr. Lardinois, and Dr. Kovach, in support of this argument, Plaintiff fails to raise any legal argument regarding ALJ Schmidt's reasoning for assigning diminished weight to these opinions. Instead, Plaintiff takes issue with ALJ Schmidt's characterization of the record underlying her reasons for assigning diminished weight to said opinions. That is to say that Plaintiff does not argue that ALJ Schmidt may not assign diminished weight to a particular opinion because it is inconsistent with the record; but instead, Plaintiff argues that each particular opinion is consistent with the record. Plaintiff's argument is here again a factual one based largely on Plaintiff's own characterization of the record. Moreover, for several of the opinions here, Plaintiff ignores large portions of ALJ Schmidt's reasoning and decision.

For example, Plaintiff's only argument in support of her assertion that ALJ Schmidt erred in the consideration of Ms. Bauer's opinion is that ALJ Schmidt did so for "specious reasons." (Plf.'s Mem. [Docket No. 21] at 14). Other than this conclusory assertion, Plaintiff merely

summarizes those portions of the evidence from the record which she believes is supportive and consistent with the Ms. Bauer's opinion. The majority of the portion of Plaintiff's memorandum which she dedicates to discussing Ms. Bauer's opinion is merely a summarization of said opinion. (See, Plf.'s Mem. [Docket No. 21] at 14).[7] Plaintiff merely highlights portions of the record which she believes support Ms. Bauer's opinion; however, these are the same records to which ALJ Schmidt cited and considered. (See, e.g., Tr. 999).[8]

The same is true for Plaintiff's discussion of Dr. Schenck's opinions. (See, Plf.'s Mem. [Docket No. 21] at 11–12). In support of Dr. Schenck's opinions, Plaintiff merely summarizes the opinions themselves, asserts that the opinions are consistent with the opinions of Ms. Bauman, and asserts that Plaintiff's interpretation of Dr. Butler's testimony was not inconsistent with the opinions of Dr. Schenck as ALJ Schmidt concluded. (Id.). Here again, Plaintiff merely highlights portions of the record which she believes support the opinions of Dr. Schenck;

---

[7] Plaintiff's summarization of Ms. Bauer's opinion contains at least one factual inconsistency. (See, Plf.'s Mem. [Docket No. 21] at 14). Plaintiff asserts that Ms. Bauer opined that Plaintiff "was likely to have future episode requiring inpatient or residential treatment." (Id.) (citing Tr. 696). Ms. Bauer actually opined that Plaintiff was "likely to have future episode requiring inpatient or residential treatment unless community support program services [were] provided." (Tr. 696) (emphasis added).

[8] Moreover, Plaintiff's discussion of ALJ Schmidt's reasoning for discounting Ms. Bauer's opinion does not acknowledge the bulk of ALJ Schmidt's discussion of Ms. Bauer's opinion. For example, ALJ Schmidt reasoned that Ms. Bauer's opinion was entitled to lesser weight because it was largely based on Plaintiff's own subjective complaints, and ALJ Schmidt also discussed how the "State of Minnesota definition of an adult with a serious and persistent mental illness" standard employed by Ms. Bauer was not a standard "used in the sequential evaluation process for determining disability under the Social Security Act and regulations." (Tr. 999). Plaintiff's argument related to the opinion of Ms. Bauer does not challenge this reasoning proffered by ALJ Schmidt. (See, Plf.'s Mem. [Docket No. 21]). Although Plaintiff does not specifically challenge the other reasons provided by ALJ Schmidt in discounting the opinion of Ms. Bauer, the Court's review of the record indicates that ALJ Schmidt's reasons for discounting Ms. Bauer's opinion accurately reflect the record and constitute proper reasons for discounting said opinion. See, e.g., Miller v. Colvin, 784 F.3d 472, 477 (8th Cir. 2015); Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997); Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991); Papesh v. Colvin, 786 F.3d 1126, 1132 (8th Cir. 2015); Wildman v. Astrue, 596 F.3d 959, 967 (8th Cir. 2010); Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001); Chesser v. Berryhill, 858 F.3d 1161, 1167 (8th Cir. 2017); Lawson v. Colvin, 807 F.3d 962, 967 (8th Cir. 2015); DeLuca v. Astrue, No. 10-cv-2032 (JNE/FLN), 2011 WL 2633851, at *13–14 (D. Minn. May 25, 2011), report and recommendation adopted, 2011 WL 2622384 (D. Minn. July 5, 2011); Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004).

however; this is the same evidence which was previous considered and cited by ALJ Schmidt. (Tr. 998).[9]

Plaintiff's argument regarding the opinion of Ms. Bauman is equally ill fated. Plaintiff's only argument in support of Ms. Bauman's opinion is that ALJ Schmidt should have assigned greater weight to said opinion because it is consistent with other portions of the record, including evidence from Plaintiff's second therapist and Dr. Schenck. (Plf.'s Mem. [Docket No. 21] at 12–13). Yet again, Plaintiff merely highlights the portions of the record which she believes supports Ms. Bauman's opinion; but this is the same evidence which was previously considered by ALJ Schmidt. (Tr. 999).[10]

---

[9] Plaintiff's argument regarding Dr. Schenck's opinions also ignores the majority of ALJ Schmidt's discussion of said opinions, and ALJ Schmidt's proffered reasons for assigning diminished weight to Dr. Schenck's opinions. In addition to the fact that Dr. Schenck's opinions are inconsistent with the record as a whole, including Dr. Schenck's own treatment notes, ALJ Schmidt also reasoned that Dr. Schenck's opinions were entitled to lesser weight because they were unsupported by an explanation of the medical evidence relied upon to form said opinion; based largely on Plaintiff's own subjective complaints; and rendered on check-the-box forms. (Tr. 991–992, 998). ALJ Schmidt also noted that on at least one occasion Plaintiff failed to comply with Dr. Schenck's treatment recommendations for occupational assessment and counseling. Plaintiff's argument related to the opinions of Dr. Schenck does not challenge this reasoning proffered by ALJ Schmidt. (See, Plf.'s Mem. [Docket No. 21]). Although Plaintiff does not specifically challenge these reasons provided by ALJ Schmidt in discounting the opinion of Dr. Schenck, the Court's review of the record indicates that ALJ Schmidt's reasons for discounting Dr. Schenck's opinions accurately reflect the record and constitute proper reasons for discounting said opinions. See, e.g., Miller v. Colvin, 784 F.3d 472, 477 (8th Cir. 2015); Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997); Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991); Papesh v. Colvin, 786 F.3d 1126, 1132 (8th Cir. 2015); Wildman v. Astrue, 596 F.3d 959, 967 (8th Cir. 2010); Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001); Chesser v. Berryhill, 858 F.3d 1161, 1167 (8th Cir. 2017); Lawson v. Colvin, 807 F.3d 962, 967 (8th Cir. 2015); DeLuca v. Astrue, No. 10-cv-2032 (JNE/FLN), 2011 WL 2633851, at *13–14 (D. Minn. May 25, 2011), report and recommendation adopted, 2011 WL 2622384 (D. Minn. July 5, 2011); Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004).

[10] Plaintiff's argument here again ignores ALJ Schmidt's other reasons for discounting the opinion of Ms. Bauman. In addition to Ms. Bauman's opinion being inconsistent with other evidence in the record, ALJ Schmidt reasoned that Ms. Bauman's opinion was entitled to lesser weight because it relied on GAF scores without providing an explanation or reasoning in support of said GAF score, and Ms. Bauman specifically noted that her prognosis of Plaintiff was "unknown" "due to a lack of therapeutic interaction." (Tr. 999). Plaintiff's argument related to the opinion of Ms. Bauman does not challenge this reasoning proffered by ALJ Schmidt. (See, Plf.'s Mem. [Docket No. 21]). Although Plaintiff does not specifically challenge these reasons provided by ALJ Schmidt in discounting the opinion of Ms. Bauman, the Court's review of the record indicates that ALJ Schmidt's reasons for discounting Ms. Bauman's opinion accurately reflect the record and constitute proper reasons for discounting said opinions. See, e.g., Wright v. Colvin, 789 F.3d 847, 855 (8th Cir. 2015) (demonstrating that the Eighth Circuit Court of Appeals has specifically noted the subjectivity of Global Assessment Functioning scores; recognized an ALJ's discretion in assigning weight to GAF scores; recognized that the Commissioner has, for at least the past ten years, recognized that GAF scores have limited importance; and that "GAF scores have no direct correlation to the severity standard used by the Commissioner"); Jones v. Astrue, 619 F.3d 963, 973–74 (8th Cir. 2010); Nowling v. Colvin, 813 F.3d 1110, 1123 (8th Cir. 2016) ("GAF scores are of little value."); Thomas v. Berryhill, 698 Fed. App'x 323, 324 (8th

Plaintiff also argues that ALJ Schmidt erred in assigning lesser weight to the opinion of Dr. Lardinois and Dr. Kovach because ALJ Schmidt's assessment that said opinion failed to set forth any specific work-related functional limitations is "contrary to the evidence" in the record. (Plf.'s Mem. [Docket No. 21] at 13). Plaintiff's argument here is again based on Plaintiff's recharacterization of the record. (See, Id.). Although their treatment notes, as highlighted by Plaintiff, provide that Plaintiff has a history of making subjective reports of difficulty communicating, maintaining relationship, and understanding social perspective, neither Dr. Lardinois nor Dr. Kovach offered an opinion on how that subjective history would affect any work-related functional limitations. (Tr. 788). Although, Dr. Lardinois and Dr. Kovach did check a box indicating that "[a]s a result of an emotional disturbance [Plaintiff] has a significant impaired home, school, or community functioning that has lasted at least one year, or that in the written opinion of a mental health professional present substantial risk of lasting at least one year," neither Dr. Lardinois nor Dr. Kovach explained this generic comment or how it translated to any "specific work-related functional limitations." (See, Tr. 789). The same is true for Dr. Lardinois and Dr. Kovach's written comment that Plaintiff would need "high structure and support in order to maintain independence and safety." (Tr. 790). Here again, the Plaintiff asks the Court to review the same evidence as ALJ Schmidt but to reach an opposite conclusion.[11]

---

Cir. 2017); Miller v. Colvin, 784 F.3d 472, 477 (8th Cir. 2015); Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997); Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991); Papesh v. Colvin, 786 F.3d 1126, 1132 (8th Cir. 2015); Wildman v. Astrue, 596 F.3d 959, 967 (8th Cir. 2010).

[11] Although Plaintiff does not specifically challenge the other reasons provided by ALJ Schmidt in discounting the opinion of Dr. Lardinois and Dr. Kovach, the Court's review of the record indicates that ALJ Schmidt's reasons for discounting the opinion of Dr. Lardinois and Dr. Kovach accurately reflect the record and constitute proper reasons for discounting said opinions. See, e.g., Miller v. Colvin, 784 F.3d 472, 477 (8th Cir. 2015); Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997); Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991); Papesh v. Colvin, 786 F.3d 1126, 1132 (8th Cir. 2015); Wildman v. Astrue, 596 F.3d 959, 967 (8th Cir. 2010); Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001); Chesser v. Berryhill, 858 F.3d 1161, 1167 (8th Cir. 2017); Lawson v. Colvin, 807 F.3d 962, 967 (8th Cir. 2015); DeLuca v. Astrue, No. 10-cv-2032 (JNE/FLN), 2011 WL 2633851, at *13–14 (D. Minn. May 25, 2011), report and recommendation adopted, 2011 WL 2622384 (D. Minn. July 5, 2011); Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004).

In summation, Plaintiff's argument related to ALJ Schmidt's evaluation of the opinions of Dr. Schenck, Ms. Bauman, Ms. Bauer, Dr. Lardinois, and Dr. Kovach is merely that there was substantial evidence in the record that might also have supported the selected medical opinions. The Court may not, however, reverse the ALJ simply because substantial evidence may support an opposite conclusion. See, Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015). Nor can the Court substitute its own judgment or findings of fact for those of the ALJ, see, Woolf, 3 F.3d at 1213, because the Court "must consider evidence that both supports and detracts from the ALJ's decision," and it "must affirm the denial of benefits if 'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings.'" See, Milam, 794 F.3d at 983 (citations omitted) (emphasis added). Such is the present case now before the Court. Plaintiff merely highlights selective evidence favorable to her position, and she asks this Court to reevaluate said evidence to reach a conclusion different than the one reached by ALJ Schmidt when she considered the same record. This the Court cannot do. See, Milam, 794 F.3d at 983.

### 2. Dr. Butler

During Plaintiff's first and second administrative hearing, Dr. Butler testified as an independent medical expert. (Tr. 70–85, 106–115). At the December 29, 2015, administrative hearing, Dr. Butler testified that her review of Plaintiff's medical record, as discussed by Dr. Butler at the administrative hearing, demonstrated that Plaintiff had work-related functional limitations which limited her to "unskilled through semi-skilled work . . . where there would be brief, superficial, and infrequent contact with co-workers and supervisors in a job or [where] serving the public is not [her] primary job task." (Tr. 76). At the October 24, 2017, administrative hearing, Dr. Butler testified that her review of Plaintiff's medical record, as

discussed by Dr. Butler at the administrative hearing, demonstrated that Plaintiff had work-related functional limitations which limited her to "unskilled through semi-skilled work with brief and superficial contact with" the "public, co-workers, and supervisors." (Tr. 112).

In discussing Dr. Butler's opinion, ALJ Schmidt assigned said opinion "significant weight" reasoning that Dr. Butler's opinion was consistent with the record as a whole and well supported by explanation, including the examples cited by Dr. Butler in her hearing testimony and the examples discussed by ALJ Schmidt in her decision. (Tr. 991, 997). ALJ Schmidt, acknowledging that Dr. Butler's opinion had been rendered before the record had been completed, noted that the evidence submitted since Dr. Butler's review of the record did "not support greater limitations" than those opined by Dr. Butler. (Tr. 991, 997). ALJ Schmidt also noted that Dr. Butler had specialized knowledge in assessing mental impairments and limitation within the disability standards used by the Social Security Administration. (Tr. 991, 997).

Plaintiff argues that ALJ Schmidt committed reversible error by relying on Dr. Butler's opinion because Dr. Butler's opinion was based on a review of the record before the record was completed. (Plf.'s Mem. [Docket No. 21] at 15).[12] In other words, Plaintiff argues that Dr. Butler's opinion should have been assigned some unspecified lesser weight because it failed to account for later developments in the medical record. The Eighth Circuit Court of Appeals has rejected this precise argument. Adamczyk v. Saul, 817 F. App'x 287, 290 (8th Cir. 2020).

Although Dr. Butler's review of the record did not include medical evidence treatment records created after she gave her testimony on October 24, 2017, the ALJ did not err in assigning "significant weight" to Dr. Butler's opinion because the ALJ specifically reviewed all

---

[12] Plaintiff also argues that the "ALJ failed to acknowledge that Dr. Butler reviewed the evidence in October 2017—when most of the records in this case had not even been submitted." (Id.). This assertion is, however, not factually supported by the record now before the Court. ALJ Schmidt specifically discussed the evidence submitted after Dr. Butler's review of the record, and the ALJ concluded that the evidence submitted after Dr. Butler's review of the record did not support a greater limitation than the limitation opined by Dr. Butler. (Tr. 991).

of the mental health records after October 24, 2017, and she found that Dr. Butler's opinion was consistent with those records. (Tr. 991). An ALJ may assign an opinion greater weight even where the opinion "failed to account for later developments," if the ALJ reviews the later developments in the medical record and find that the "subsequent evidence and the record as a whole were consistent with the" opinion. See, Adamczyk v. Saul, 817 F. App'x 287, 290 (8th Cir. 2020) (citing Harris v. Barnhart, 356 F.3d 926, 931 (8th Cir. 2004); 20 C.F.R. §§ 404.1527, 416.927(c)(4); Hacker v. Barnhart, 459 F.3d 934, 939 (8th Cir. 2006)). "In so finding, the ALJ simply weighed the evidence provided by medical professionals and other record evidence." Adamczyk v. Saul, 817 F. App'x 287, 290 (8th Cir. 2020) (citing Hacker v. Barnhart, 459 F.3d 934, 939 (8th Cir. 2006)).

This is exactly the findings reached by ALJ Schmidt in the present case—Dr. Butler's opinion was consistent with the record as a whole, including evidence from after October 24, 2017, when Dr. Butler rendered her second, most recent opinion. Thus, the ALJ did not err in assigning "significant weight" to the opinion of Dr. Butler.

### C. Separation of Powers

Pursuant to the separation of powers, "[t]he Constitution prohibits even modest restrictions on the President's power to remove the head of an agency with a single top officer." Bhatti v. Fed. Hous. Fin. Agency, 15 F.4th 848, 853 (8th Cir. 2021) (quoting Collins v. Yellen, 141 S. Ct. 1761, 1787 (2021)). The Social Security Administration (hereinafter the "SSA") has a single top officer—the Commissioner of Social Security—and is an independent agency. Kaufmann v. Kijakazi, 32 F.4th 843, 848 (9th Cir. 2022); see, Seila Law LLC v. Consumer Fin. Prot. Bureau, 140 S. Ct. 2183, 2202 (2020). Pursuant to statute, the Commissioner of the SSA

"may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." 42 U.S.C. § 902(a)(3).

Plaintiff contends that the "SSA's structure is unconstitutional as it violates the separation of powers" by unconstitutionally limiting the President's ability to remove the Commissioner. (Plf.'s Mem. [Docket No. 21] at 16–17). Defendant agrees that "§ 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause"; however, Defendant contends that this violation alone is an insufficient basis to order remand of the present case. (Def.'s Mem. [Docket No. 23] at 7).

The Eighth Circuit Court of Appeals does not appear to have addressed this issue. In addressing this issue, other Courts, including Courts in this District, have found instructive the Ninth Circuit Court of Appeals decision in Kaufmann v. Kijakazi, 32 F.4th 843 (9th Cir. 2022). At least one Court in this District, has observed that Kaufmann is consistent with decisions issued by other Courts in the Eighth Circuit before Kaufmann. See, B. v. Kijakazi, No. 20-cv-2483 (DTS), Order [Docket No. 34] at 3 n.2 (D. Minn. July 7, 2022) (collecting cases). This Court likewise finds Kaufmann to be instructive.

In Kaufmann, the Ninth Circuit addressed § 902(a)(3)'s removal provision by applying the United States Supreme Court's reasoning in Seila and Collins. See, Kaufmann, 32 F.4th at 848–49. The Kaufmann Court concluded that § 902(a)(3) is in violation of the Constitution because the SSA Commissioner is a single officer at the head of an independent administrative agency and removable only for cause. Id. The Court further determined, however, that the provision is severable because "[t]he remaining provisions of the Act are capable of fully independent function, and nothing in the text, structure, or history of the statute makes it 'evident' that Congress would have preferred, as an alternative to a Commissioner who is

24

removable at will, no Social Security Administration at all." <u>Id.</u> at 849 (citing <u>Seila</u>, 140 S. Ct. at 2197; <u>Collins</u>, 141 S. Ct. at 1783).

For the same reasons discussed above and in <u>Kaufmann</u>, this Court finds § 902(a)(3)'s removal provision violates separation of powers. Neither party refutes this finding. The Court further finds that this removal provision is severable.

This does not end this Court analysis. The Court must now determine the appropriate remedy for his Constitutional violation.

The <u>Collins</u> Court explained that an unconstitutional removal provision does not itself affect the authority of the agency officials to act, and therefore if the agency officials served pursuant to valid appointments to their office, then "there is no reason to regard any of the actions taken by" said officials "as void." <u>Id.</u> at 1787. Instead, an individual seeking to invalidate an agency's actions based on the existence of an unconstitutional removal provision must demonstrate that the unconstitutional removal provision caused "compensable harm." <u>Id.</u> at 1788–89.

Plaintiff contends that she suffered necessary compensable harm because she "did not receive the constitutionally valid adjudication process from an ALJ" and "did not receive the constitutionally valid determination by an ALJ to which she was entitled." (Plf.'s Reply [Docket No. 24] at 3–4). In short, Plaintiff asserts that she has suffered harm by the mere fact that Mr. Saul served as Commissioner under an unconstitutional removal provision. (<u>See</u>, <u>Id.</u> at 4). The Court finds Plaintiff's argument here to be unpersuasive because <u>Collins</u> rejected this exact argument. <u>See</u>, <u>Collins</u>, 141 S. Ct. at 1787.

Plaintiff also contends that she has demonstrate compensable harm because, but for the unconstitutional removal provision, President Biden would have removed Mr. Saul as

Commissioner on the first day of his Presidency. (Id. 3–5). In support of this contention, Plaintiff points to President Biden's removal of Mr. Saul immediately following the day the Department of Justice confirmed the unconstitutional nature of the removal provision after the Collins decision. (Id.). Plaintiff also highlights a statement released from the White House regarding Mr. Saul's actions noting that "[s]ince taking office, Commissioner Saul has undermined and politicized Social Security benefits, . . . reduced due process protections for benefits appeals hearings, and taken other actions that run contrary to the mission of the agency and the President's policy agenda." (Id. at 5).

The Court finds Plaintiff's arguments here to be unpersuasive. Courts have consistently rejected the exact argument Plaintiff raises here. Lisa D. v. Kijakazi, No. 8:21-CV-294, 2022 WL 952778, at *7 (D. Neb. Mar. 30, 2022); Jenny B. v. Kijakazi, No. 1:21-CV-00143-NT, 2022 WL 872627, at *4 (D. Me. Mar. 24, 2022), report and recommendation adopted, 2022 WL 1689415 (D. Me. May 26, 2022); Scott E. v. Kijakazi, No. 1:21-CV-00110-JAW, 2022 WL 669687, at *5 (D. Me. Mar. 6, 2022), report and recommendation adopted, 2022 WL 1026988 (D. Me. Apr. 6, 2022); Jean P. v. Kijakazi, No. 8:21-CV-200, 2022 WL 1505797, at *14 (D. Neb. May 12, 2022); Sexton v. Comm'r of Soc. Sec., No. 1:21-CV-00379-EPG, 2022 WL 1471083, at *7 (E.D. Cal. May 10, 2022).

As many other Courts have noted, "the fact that President Biden removed the Commissioner soon after the DOJ's opinion regarding the applicably of the Collins decision to the statute does not necessarily mean President Biden would have removed Commissioner Saul" any sooner than he did. Kathy R. v. Kijakazi, No. 2:21-cv-95 (JDL), 2022 WL 42916 at *4 (D. Me. Jan. 5, 2022). Moreover, the White House statement to which Plaintiff points "was attributed to a 'White House official' and not the President [himself]." Id.

On the record now before the Court, Plaintiff has failed to demonstrate the type of compensable harm required by <u>Collins</u>.

For the reasons discussed above, the Court concludes that the removal provision in 42 U.S.C. § 902(a)(3) violates the separation of powers and is severable, but because Plaintiff has not demonstrated that the provision caused compensable harm, Plaintiff is not entitled to remand. This finding is most in line with the Supreme Court's decision in <u>Collins</u> where the Court found unconstitutional a for-cause removal restriction related to a single Director of the Federal Housing Finance Agency but declined to undo the actions undertaken by the Director. <u>Collins</u>, 141 S. Ct. at 1787.

## V. Conclusion

The Court's review of the record as a whole indicates that the ultimate decision that Plaintiff was not disabled as defined by the Social Security Administration Act during the adjudicated period was supported by substantial evidence in the record. Specifically, on the Court's review of the record as a whole, the undersigned concludes that ALJ Schmidt's decision to discount Plaintiff's subjective complaints, ALJ Schmidt's RFC determination, and her decision that jobs existed in significant numbers in the national economy which Plaintiff could perform within the RFC determination were each supported by substantial evidence in the record.

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.    Plaintiff's Motion for Summary Judgment, [Docket No. 20], be **DENIED**; and

2.    Defendant's Motion for Summary Judgment, [Docket No. 22], be **GRANTED**.

Dated:  July 27, 2022                              s/Leo I. Brisbois
                                                   Hon. Leo I. Brisbois
                                                   United States Magistrate Judge

## **NOTICE**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).